01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
07                                     AT SEATTLE

08   WILLIAM HANCOCK,                      )    CASE NO. C05-1494-JLR-MAT
                                           )
09           Plaintiff,                    )
                                           )
10      v.                                 )    REPORT AND RECOMMENDATION
                                           )    RE: SOCIAL SECURITY
11   JO ANNE B. BARNHART, Commissioner     )    DISABILITY APPEAL
     of Social Security                    )
12                                         )
             Defendant.                    )
13   _____ )

14           Plaintiff William D. Hancock proceeds through counsel in his appeal of a final decision of

15   the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16   denied plaintiff's application for Disability Insurance (DI) benefits and for Supplemental Security

17   Income (SSI) payments after a hearing before an Administrative Law Judge (ALJ).

18           Having considered the ALJ's decision, the administrative record (AR), and all memoranda

19   of record, it is recommended that the case be REMANDED for further administrative proceedings.

20   / / /

21   / / /

22   / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01                               **FACTS AND PROCEDURAL HISTORY**

02         Plaintiff was born on XXXX, 1950.[1]  He has a limited 10th grade education.  Plaintiff

03 previously worked as a self-employed owner operator of a janitorial service, as a janitor, and as

04 a forklift operator.

05         Plaintiff filed concurrent applications for DI and SSI in May 2003, alleging disability

06 beginning January 1, 2001.  His alleged disabling conditions included depression, anxiety, and

07 panic attacks.  (*See* AR 92.)  Plaintiff's applications were denied initially and on reconsideration,

08 and he timely requested a hearing.

09         ALJ Charlie Paul Andrus held a hearing on January 30, 2004.  (AR 242-64.)  The ALJ

10 heard testimony from plaintiff and vocational expert Dennis Conroy.  On June 23, 2004, ALJ

11 Andrus issued a decision finding plaintiff not entitled to a period of disability, DI benefits, and not

12 eligible for SSI payments (AR 16-23.)

13         Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review

14 plaintiff's claim.  (AR 4-6.)  Plaintiff appealed this final decision of the Commissioner to this

15 Court.

16                                           **JURISDICTION**

17         The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

18                                          **DISCUSSION**

19         The Commissioner follows a five-step sequential evaluation process for determining

20

---

21         [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

02  be determined whether the claimant is gainfully employed.  The ALJ found that after the date of

03  alleged onset of disability, plaintiff worked approximately eight to ten hours a week.  Accordingly,

04  the ALJ found plaintiff had not engaged in substantial gainful activity during the relevant time

05  period.  At step two, it must be determined whether a claimant suffers from a severe impairment.

06  The ALJ found plaintiff's depression, anxiety, post traumatic stress disorder, and back pain to be

07  severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The

08  ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairments.

09  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

10  functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

11  inability to perform past relevant work.  The ALJ assessed plaintiff's RFC and found him capable

12  of performing his past relevant work as a janitor.  If a claimant demonstrates an inability to

13  perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that

14  the claimant retains the capacity to make an adjustment to work that exists in significant levels in

15  the national economy.  Because the ALJ found plaintiff able to perform his past relevant work at

16  step four, he did not proceed to step five.

17          This Court's review of the ALJ's decision is limited to whether the decision is in

18  accordance with the law and the findings supported by substantial evidence in the record as a

19  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.1993).  Substantial evidence means more

20  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

21  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

22  (9th Cir.1989).  If there is more than one rational interpretation, one of which supports the ALJ's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

02  2002).

03      In this case, plaintiff asserts that the ALJ erred by not finding his personality disorder to

04  be a severe impairment, and by failing to consider the limitations opined by his examining and

05  treating psychiatrists and the DDS psychological/psychiatric consultants.  He also alleges error in

06  the ALJ's finding that he had the RFC to perform light work, and in finding him capable of

07  returning to his past relevant work as a janitor.  He argues the ALJ erred further in his hypothetical

08  to the vocational expert.  Plaintiff asks for an award of benefits or, alternatively, remand for

09  further proceedings with both a medical examiner and vocational expert present to testify.  The

10  Commissioner argues that the ALJ's decision is supported by substantial evidence and should be

11  affirmed.

12                    Personality Disorder, Not Otherwise Specified (NOS)

13      At step two, plaintiff must make a threshold showing that his medically determinable

14  impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*,

15  482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "Basic work activities" refers to "the

16  abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An impairment or

17  combination of impairments can be found 'not severe' only if the evidence establishes a slight

18  abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*

19  *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28).

20  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  (Id.)

21  (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect"

22  of an individual's impairments in considering severity.  (Id.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01        In the present case, Dr. Lopez, plaintiff's treating psychiatrist, gave him a diagnosis of

02  personality disorder, not otherwise specified (AR 177), and Mr. Mills, the community mental

03  health nurse who saw plaintiff weekly under Dr. Lopez's supervision, reiterated that diagnosis.

04  (AR 239.)  Conversely, neither Dr. Noia, nor Dr. Shapiro, the consulting psychologists, gave

05  plaintiff a personality disorder diagnosis.  Dr. Geiseken, the state agency reviewing physician,

06  diagnosed a personality disorder; however, Dr. Nobel, the agency psychologist, did not. (AR 207,

07  170.)

08        Plaintiff asserts error in the ALJ's failure to find his diagnosed personality disorder a severe

09  impairment, claiming the ALJ rejected significant probative evidence without explanation. He

10  asserts the ALJ completely ignored this diagnosis made by Dr. Lopez and acknowledged by Dr.

11  Geiseken and Mr. Mills.  The Commissioner counters that if the ALJ's omission of the personality

12  disorder diagnosis was error, it was harmless in that all of plaintiff's substantiated complaints and

13  limitations were adequately addressed by the ALJ.  In particular, in the context of the Listing of

14  Impairments in Appendix 1 of 20 C.F.R. pt. 404, subpt. P, the ALJ assessed plaintiff's mental

15  impairments in detail under listings 12.04 (affective disorders) and 12.06 (anxiety disorders),

16  considered both the medical record and plaintiff's testimony, and found plaintiff to have severe

17  impairments.  (AR 18-20.)

18        Pursuant to 20 C.F.R. §§ 404.1520a and 416.920a, as part of the special technique

19  required in evaluating mental impairments, the ALJ must rate the degree of functional limitation

20  resulting from the impairments.  These impairment-related functional limitations are known as the

21  "B" criteria set out by the regulations for each listing of mental disorders.  Functional limitations

22  can be rated using a Psychiatric Review Technique Form (PRTF), outlining the necessary steps

01  to rate the limitations in four identified broad functional areas: activities of daily living; social

02  functioning; concentration, persistence, or pace; and episodes of decompensation.      *Id.* at §§

03  404.1520a(c)(3) and 416.920a(c)(3).  Here, Dr. Geiseken and Dr. Nobel each completed a PRTF,

04  rating the severity of plaintiff's functional limitations.  (AR 200-13, 163-76.)  While Dr. Nobel did

05  not indicate the listed disorders under which he was rating plaintiff's functional limitations, it can

06  be inferred he was rating only under 12.04 (affective disorders) in light of other indications on the

07  form.  (*See* AR 173, 163).  Dr. Geiseken, on the other hand, specifies that his rating of plaintiff's

08  functional limitations was under 12.04 (affective disorders), 12.06 (anxiety-related disorders),

09  12.08 (personality disorders), and 12.09 (substance addiction disorders).  (AR 210, 200.)

10        The ALJ in the present case specifies that the "B" criteria is the same for listings 12.04 and

11  12.06 in making his analysis, yet makes no mention of listing 12.08 (personality disorders).

12  Although finding plaintiff "only partially credible[,]" (AR 21), the ALJ rates plaintiff as more

13  functionally limited than does Dr. Geiseken or Dr. Nobel based on his testimony.[2]  The ALJ

14  analyzes the "C" criteria for listing 12.04 and 12.06 separately, again making no mention of 12.08.

15  (AR 20.)  Consistent with both PRTFs (AR 211, 174), the ALJ finds no presence of the "C"

16  criteria, basing his finding on the records of Dr. Lopez and Dr. Shapiro.  (AR 20.)

17        In making his step three conclusion, the ALJ states he considered plaintiff's impairments

18  alone or in combination, yet makes no reference to the personality disorder diagnosis being part

19

20        [2] Both Dr. Geiseken and Dr. Nobel rate plaintiff's limitation "mild" for the first three areas,
    and indicate "none" and "insufficient evidence" respectively for the fourth area; i.e., "repeated
21  episodes of deterioration." (AR 210, 173.)  The ALJ, basing his findings on plaintiff's testimony
    and Dr. Geiseken's report, finds plaintiff's limitations as "moderate" for the first two areas, "mild"
22  for the third, and "no indication" for the fourth.  (AR 19.)

01  of that combination.  (*Id.*)  There is also no indication that the personality disorder diagnosis was

02  considered less significant than the 12.04 and 12.06 diagnoses, and was consequently subsumed

03  within the ALJ's finding.  The ALJ erred by ignoring the personality disorder diagnosis given that:

04  (1) it was made by plaintiff's treating physician; (2) while not noted by psychologists Drs. Noia,

05  Shapiro or Nobel, it was corroborated by Dr. Geiseken; and (3) the ALJ gave no findings setting

06  forth specific, legitimate reasons for omitting the diagnosis based on substantial evidence in the

07  record.[3]  Personality disorder is not merely another descriptive label for plaintiff's mental

08  condition; it is a discrete diagnosis the ALJ ignored.

09  <u>Physicians' and Psychologists' Opinions</u>

10          In general, more weight should be given to the opinion of a treating physician than to a

11  non-treating physician, and more weight to the opinion of an examining physician than to a non-

12  examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  *See also Smolen v.*

13  *Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) ( the opinions of specialists related to their areas of

14  specialization are given more weight than the opinions of non-specialists).  Where not contradicted

15  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

16  and convincing'" reasons.  *Lester*, 81 F.3d at 830. (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

17  1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not

18

19          [3] The cursory nature of the ALJ's analysis is further exemplified by his finding two of
20  plaintiff's conditions severe based on purportedly discounted evidence. One was finding plaintiff's
    back pain to be severe despite the lack of evidence in the medical record. (*see, e.g.*, AR 142, 156,
    192, indicating no medical conditions) and based on plaintiff's testimony found by the ALJ to be
21  "only partially credible" (AR 21).  The other was finding plaintiff's post traumatic stress disorder
    (PTSD) to be severe despite the only mention in the medical record being made by Mr. Mills,
22  whose opinions the ALJ had rejected.  (*See* AR 238-39, 21.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01   be rejected without "'specific and legitimate reasons' supported by substantial evidence in the

02   record for so doing." (Id.) at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

03   1983)). Where the opinion of the treating physician is contradicted, and the non-treating

04   physician's opinion is based on independent clinical findings that differ from those of the treating

05   physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See*

06   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to

07   resolve this conflict. *Id.*

08       "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

09   a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

10   81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

11   plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

12   1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

13   the evidence supports a finding of disability. *See, e.g.*, *Schneider v. Commissioner of Social Sec.*

14   *Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

15   the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

16   functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's

17   reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony

18   legally insufficient; finding record fully developed and disability finding clearly required).

19       However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

20   *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

21   were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated

22   by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 an undeserving, able claimant." *Barbato v. Commissioner of SSA*, 923 F. Supp. 1273, 1278 (C.D.

02 Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that

03 some of his stated reasons for rejecting a physician's opinion were legally insufficient).

04  1.    Dr. Lopez:

05        Plaintiff asserts that the ALJ, in addition to the alleged error regarding his personality

06 disorder, also erred in failing to reflect Dr. Lopez's findings regarding his abilities involving the

07 complexity of job instructions, behaving in an emotionally stable manner, relating predictably in

08 social situations, demonstrating reliability, or dealing with supervisors.   (AR 178-79.)   In

09 particular, plaintiff asserts that Dr. Lopez's treatment notes support the conclusion that he was

10 seriously limited in his ability to interact with supervisors, and had previously experienced

11 problems with bosses. (*See, e.g.*, AR 143.)   In addition, plaintiff alleges the ALJ erred by ignoring

12 or overlooking Dr. Lopez's statement that he had discontinued medication because of the side

13 effects.

14        Dr. Lopez, plaintiff's treating psychiatrist, gave him three diagnoses: major depressive

15 disorder, recurrent, moderate; social phobia; and personality disorder, NOS.  (AR 177.)   In a

16 medical assessment, Dr. Lopez checked "fair" for plaintiff's ability to understand, remember and

17 carry out complex job instructions; checked the line between "fair" and "good" for detailed, but

18 not complex job instructions; and checked "good" for simple job instructions.  (AR 179.)   The

19 ALJ mentioned these various limitations in discussing plaintiff's impairments under listings 12.04

20 and 12.06. (AR 18-20.)   Similarly, in rating plaintiff's ability to make personal/social adjustments

21 on the same form, Dr. Lopez checked various spots in the "fair" category for plaintiff's ability to

22 behave in an emotionally stable manner, relate predictably in social situations, and to demonstrate

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  reliability.  (AR 179.)  Although the ALJ did not specifically mention these three findings, these

02  particular categories might be assumed to be subsumed into other categories.

03          Dr. Lopez also rated plaintiff as having "poor" ability in interacting with supervisors.  (AR

04  29.)  While the ALJ acknowledged plaintiff's difficulty being in crowds and dealing with strangers

05  (AR 178), there was no reference to his limitation in interacting with supervisors.  (*Id.*)  Contrary

06  to the Commissioner's argument that an inference can be drawn that the ALJ did not accept that

07  part of Dr. Lopez's opinion in light of the lack of other medical opinion in the record,  the ALJ

08  erred in this omission.  However, plaintiff did not successfully make the case for crediting the

09  opinion of Dr. Lopez as true on this issue.  Dr. Lopez's treatment notes do not support a

10  conclusion that plaintiff was seriously limited in his ability to deal with supervision.  *See., e.g.*, AR

11  143, 225-26, 228-29, 234-35 (reflecting reports of anger generally and one report that he did not

12  respect bosses who did not respect him).   Also, Dr. Lopez's opinion of plaintiff's ability to

13  interact with supervisors is not supported by the opinions of Dr. Shapiro and Dr. Noia that he was

14  able to interact appropriately with others.  (AR 158, 194.)  Plaintiff's ability to interact with

15  supervisors needs to be addressed on remand.[4]

16          Plaintiff is correct that the ALJ ignored the medication side effect issue.  Treatment records

17  of Dr. Lopez and Mr. Mills reflect ongoing interactions with plaintiff regarding Effexor and

18  Lexapro.  (*See* AR 218-38.)  Progress notes reveal the clinicians repeatedly educating plaintiff

19  concerning the benefits of medications.  (*Id.*)  For his part, plaintiff generally resisted medication,

20  with complaints of side effects including impotence, nausea and feeling "wired," headaches and

21  _____

22          [4] It should also be noted that the ALJ misstated Dr. Lopez's rating of plaintiff's ability to
    deal with work stress as being "fair," when in fact Dr. Lopez rated it as "poor."  (AR 18, 178.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  lack of appetite. (AR 218-20, 229.) However, the focus of plaintiff's allegation of error is unclear

02  given the absence of a finding by the ALJ reflecting negatively on plaintiff's lack of compliance

03  with doctors' orders regarding medication. And, significantly, at the time of the hearing, plaintiff

04  stated he was taking BuSpar for his depression. (AR 247-48.) In sum, any error in this regard

05  was harmless.

06  2.   <u>Dr. Noia</u>:

07       Dr. Noia, a psychologist who performed a psychological examination on plaintiff as a

08  consultation, diagnosed him with depressive disorder, NOS. (AR 158.) Plaintiff alleges the ALJ

09  failed to incorporate three of Dr. Noia's assessments into his findings: the capability of following,

10  understanding and remembering simple instructions/directions and performing simple and some

11  complex tasks; the capability of maintaining attention and concentration, attending a routine and

12  maintaining a schedule but not on a consistent basis; and the prognosis of "fair." (*Id.*)

13       The ALJ relied on Dr. Noia's report in finding plaintiff severely impaired as the result of

14  depression and anxiety, stating that Dr. Noia's opinion was entitled to more weight than that of

15  the nurse, Mr. Mills. (AR 18, 21.) Although his opinion was not further cited by the ALJ, Dr.

16  Noia's findings that plaintiff's prognosis was "fair" and his capabilities regarding following

17  instructions and performing tasks were incorporated into the ALJ's decision, particularly into the

18  finding that plaintiff is "limited to the performance of routine, repetitive tasks[.]" (AR 22.)

19  However, the ALJ did not address Dr. Noia's finding concerning plaintiff's inability to maintain

20  attention and concentration for tasks, to attend to a routine and maintain a schedule on a

21  consistent basis. As reflected below, this failure to address the consistency issue is error on the

22  ALJ's part, and this issue should be addressed on remand rather than crediting the testimony of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 Dr. Noia.  Dr. Noia's opinion should be considered along with the opinion of Dr. Shapiro that

02 plaintiff's difficulty in attending to a routine and maintaining a schedule was due to a lack of

03 motivation and lethargy, particularly in the absence of opinion from other doctors on the issue of

04 consistency.  (AR 194.)

05 3.    Drs. Geiseken and Nobel:

06        Physician Geiseken and psychologist Nobel reviewed plaintiff's records on behalf of DDS,

07 each performing a Mental Residual Functional Capacity Assessment (MRFA) and completing a

08 PRTF.  (AR 196-213, 159-76.)  The two reviewers reached the same conclusions regarding

09 plaintiff in the check-box section on the MRFA, checking the "not significantly limited" box in all

10 categories with one exception, that being the "moderately limited" box for plaintiff's "ability to

11 carry out detailed instructions."  (AR 196-97, 159-60.)  In the narrative section of that form, Dr.

12 Geiseken states plaintiff "retains capacity for past relevant work as a janitor" (AR 198), and Dr.

13 Nobel states plaintiff "retains capacity for mental demands of work." (AR 161.)  As stated above,

14 the ALJ relied on the PRTFs completed by Drs. Geiseken and Nobel in making his findings

15 regarding plaintiff's functional limitations.  (AR 200-13, 163-76.)

16        Plaintiff asserts that the ALJ erred in failing to incorporate the assessments of Drs.

17 Geiseken and Nobel that he was moderately limited in his ability to carry out detailed instructions.

18 Having found plaintiff limited to the performance of routine, repetitive tasks, the ALJ was not

19 required to assess his ability to carry out detailed instructions in his RFC.

20                          Residual Functional Capacity

21        The ALJ determined that plaintiff had the RFC to "perform the physical requirements of

22 a full range of heavy work ... but is limited to the performance of routine, repetitive tasks that do

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01 not involve high levels of stress or involve significant interaction with members of the general

02 public[.]"  (AR 22.)  Plaintiff argues that the ALJ erroneously determined his RFC by failing to

03 properly consider the limitations opined by his examining and treating psychiatrist and by the DDS

04 psychological and psychiatric consultant.

05     The record in this case contains substantial evidence supporting the ALJ's RFC

06 assessment.  However, the ALJ's analysis was nonetheless cursory as reflected by: (1) the

07 omission of Dr. Lopez's diagnosis of personality disorder; (2) the failure to address the

08 consistency issue in Dr. Noia's opinion; and (3) the absence of consideration of Dr. Lopez's rating

09 as to plaintiff's ability to interact with supervisors.  As the RFC is implicated by these issues, it

10 should be reassessed on remand.

11                                Past Relevant Work

12     In finding plaintiff has the capacity to perform his past work, the ALJ stated "as a janitor,"

13 as opposed to "as the self-employed owner operator of a janitorial service."  (AR 21.)  The ALJ

14 relied on the vocational expert in making this finding, and specified "as performed by the claimant

15 and as that job is generally performed in the national economy," requiring medium exertion but

16 not "significant interaction with the general public."  (AR 21-22.)

17     Plaintiff asserts error at step four, arguing that the ALJ's determination that he could

18 perform his past relevant work as a janitor was based on an erroneous RFC finding.  Additionally,

19 plaintiff alleges error for not making findings of fact regarding the specific physical and mental

20 requirements of his past relevant work as a janitor, either as he performed it or as performed in

21 the national economy.  However, the vocational expert stated that plaintiff's past relevant work

22 as an owner of a janitorial business was a skilled, medium exertional level job.  (AR 258.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01    Plaintiff bases his argument that he cannot perform his past relevant work on his adoption

02 of the Dictionary of Occupational Titles (DOT) description of "Janitor" as found in 382.664-101.

03 The Commissioner points out that the DOT lists maximum requirements of occupations as

04 generally performed, not a range of requirements of a particular job as it is performed in a specific

05 setting, and that a vocational expert may provide more specific information about jobs than the

06 DOT. *See* SSR 00-4p, at *3.  The requirements listed under DOT 382.664-101 include: the ability

07 to apply commonsense understanding to written, oral, or diagrammatic instructions (level 3

08 reasoning); the ability to add, subtract, multiply and divide, including fractions, and to compute

09 ratio, rate, and percent (level 2 math); the ability to write reports/essays with proper format,

10 punctuation, spelling, and grammar; the ability to speak before an audience with poise, voice

11 control, and confidence; and vocational preparation between one and three months (level 3

12 Specific Vocational Preparation (SVP)).   Even when considered as a maximum, these

13 requirements seem to far exceed the demands of plaintiff's prior relevant work as a janitor.  Also,

14 given that the ALJ acknowledged plaintiff to be limited to tasks not involving "significant

15 interaction with members of the general public" (AR 22), this category appears additionally

16 inappropriate.  Many of the possible job functions described under DOT 382.664-101 involve

17 apparently intense interaction with the public (e.g.,"caution tenants regarding complaints about

18 excessive noise, disorderly conduct, or misuse of property"; "show empty apartments to

19 prospective tenants.").

20    Plaintiff argues unconvincingly that DOT 382.664-101 is consistent with his self report

21 contained in his Work History Report.  (AR 115.)  That form covered the period from 1991 to

22 2003, with  plaintiff describing his occupation as a "cleaner," making no distinction between his

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01   work as a janitor and his work as a janitorial business owner/operator. (AR 112.) Plaintiff listed

02   only cleaning functions ("vacuum cleaner, rug shampooer, strip and wax, stain removal") with the

03   exception of two functions apparently performed in conjunction with owning/operating a janitor

04   business ("invoices"; supervising 2-3 people). ( *Id.*)  Moreover, plaintiff ignored other DOT

05   categories which more closely comport with his past work as a janitor. *See, e.g.*, DOT 381.687-

06   014 ("Cleaner, Commercial or Institutional"); DOT 381.687-018 ("Cleaner, Industrial") (both

07   categories having "janitor" as alternate job title).

08           In sum, plaintiff failed to carry his burden of showing that he can no longer perform his

09   past relevant work. *See* 20 C.F.R. §§ 404.112(a), 404.1520(f), 416.920(f); *Barnhart v. Thomas*,

10   540 U.S. 20, 25 (2003), ("unless [claimant] shows that he cannot [perform past relevant work],

11   he is determined not to be disabled"); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

12   However, to the extent his RFC finding is implicated on remand, the ALJ should reassess

13   plaintiff's ability to perform his past relevant work.  In addition, because the ALJ specifies that

14   plaintiff's past relevant work means working as a janitor as opposed to operating a janitorial

15   business, such work presumably requires interacting with supervisors.  Therefore, the ALJ must

16   discuss the opinion given by the vocational expert concerning preclusion of work because of

17   limitations in dealing with supervisors.  (AR 260-61.)

18                          Hypothetical to Vocational Expert

19           A hypothetical posed to a vocational expert must include all of the claimant's functional

20   limitations supported by the record. *Thomas v. Barnhart* , 278 F.3d at 956 (citing  *Flores v.*

21   *Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)).  A vocational expert's testimony based on an

22   incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform

01  jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing

02  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).  Plaintiff argues that the ALJ erred in

03  the hypothetical posed to the vocational expert in that it was based upon an erroneous RFC

04  assessment and did not include all of his limitations, resulting in incompetent testimony that

05  plaintiff could return to his past work.  Plaintiff further asserts that when limitations found in Dr.

06  Noia's opinion were injected into the hypothetical to the vocational expert, there were no jobs

07  identified that he could perform.

08         The ALJ's examination of the vocational expert in this case began with questions about

09  plaintiff's past work, assuming limitations to simple routine work without high stress or significant

10  public contact.  The expert responded that such a person could work as a janitor, but not as a

11  business owner running a business.  (AR 258.)[5]  The ALJ then added limitations identified by Dr.

12  Lopez, namely those regarding plaintiff's abilities to deal with the public, to interact with

13  supervisors, and to deal with work stress.  (AR 260, 178.)  The expert's response was that "most

14  jobs would be eliminated .... The person would have to deal with a supervisor in a reasonable way,

15  and if there was [sic] serious limitations in that area, it would preclude a person being able to

16  maintain employment over a long period of time, unless special accommodations were made of

17  some kind."  (AR 261.)

18         Next, the ALJ instructed the vocational expert to further assume that the hypothetical

19  person "may have some difficulty regularly attending to a routine and maintaining a schedule due

20

21  _____

22         [5] The vocational expert's answers stated that the job of janitor has an SVP of 2   *or* 3,
    indicating his consideration of at least one DOT category in addition to 382.664-101.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01   to lethargy." (AR 262.)[6] The expert responded that even simple jobs require a routine, including

02   showing up for work regularly, " ... and if the person was not able to do that, then any

03   employment would be a problem." (*Id.*)

04        Following the ALJ's inquiry, plaintiff's counsel asked two questions, essentially adding the

05   limitation Dr. Noia imposed on plaintiff of not being able to maintain attention and concentration

06   for tasks or attend to a routine on a consistent basis. (AR 262-63, 158.)  The vocational expert

07   responded that this inability would preclude the jobs he had mentioned.  (AR 263.)

08        At each stage, the vocational expert's opinion was implicated by the injection of additional

09   elements into the hypothetical, resulting in opinions inconsistent with the ALJ's ultimately finding

10   plaintiff not disabled.  As the vocational expert's testimony stands in the record, the ALJ should

11   have found plaintiff disabled, and such a finding may not be supported by substantial evidence.

12   With the expansion of the hypothetical to include more and more restrictions, the ALJ should have

13   explained why he does or does not accept such limitations.

14        Specifically, those limitations include the vocational expert's opinion that most jobs would

15   be precluded by limitations on a person's ability to interact with supervisors (AR 260, 178.), the

16   opinion that "any employment would be a problem" for a person who "may have some difficulty

17   regularly attending to a routine and maintaining a schedule due to lethergy" (AR 262.), the opinion

18   that a lack of consistency in a person's ability to maintain attention and concentration or attend

19   to a routine would preclude the mentioned jobs.  Furthermore, if the vocational expert is relying

20

21        [6] This limitation was part of consulting psychologist Dr. Shapiro's opinion of plaintiff, with
     the exception that Dr. Shapiro stated "due to  *lack of motivation* and lethargy.  (AR 194.)
22   (emphasis added.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01 on the job of janitor as it is generally performed rather than as plaintiff performed it, the ALJ

02 should query the expert as to which DOT classification he meant when he opined that plaintiff

03 could return to his past work as a janitor.  (AR 258.)

04                                                  Step Five

05          At hearing, the vocational expert in this case gave testimony regarding additional work in

06 the national economy plaintiff might perform, specifically the positions of kitchen helper and hand

07 packager.  However, as acknowledged by the Commissioner, the ALJ made no finding at step five,

08 and was not required to do so, having found plaintiff capable of performing his past relevant work.

09 As with the RFC finding, a reassessment of the physicians' and psychologists' opinions may

10 implicate this decision.  If, on remand, plaintiff is found not capable of performing his past relevant

11 work, the ALJ must make a finding at step five.

12                                                **CONCLUSION**

13          The ALJ's finding that plaintiff is not disabled is not supported by substantial evidence and,

14 therefore, should be REMANDED for further administrative proceedings.

15          DATED this  14th  day of  April , 2006.

16

17                                          Mary Alice Theiler
                                            United States Magistrate Judge

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18